**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**TAMMY KATHLEEN E.**

                    **Plaintiff,**                              **22-CV-303Sr**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

                    **Defendant.**

---

**DECISION AND ORDER**

As set forth In the Standing Order of the Court regarding Social Security

Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have

consented to the assignment of this case to the undersigned to conduct all proceedings

in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g).

**BACKGROUND**

Plaintiff applied for disability insurance benefits[1] and supplemental

security income ("SSI"), with the Social Security Administration ("SSA"), on July 28,

2015, at the age of 42, alleging disability beginning December 7, 2011 due to

fibromyalgia, depression, anxiety, migraines, irritable bowel syndrome, carpal tunnel

syndrome and back pain. Dkt. #4, pp.68-69. Administrative Law Judge ("ALJ"),

Elizabeth Ebner rendered a decision that plaintiff was not disabled on January 29,

2018. Dkt. #4, pp.19-30. On March 13, 2020, the Hon. Hugh B. Scott determined that

---

[1] Plaintiff remained insured for disability benefits through December 31, 2016. Dkt. #4,
p.505.

the ALJ's determination that plaintiff's fibromyalgia diagnosis was not a severe impairment was not supported by substantial evidence and remanded the matter for further administrative proceedings. Dkt. #6, pp.725-734.

On November 8, 2021, plaintiff appeared with counsel and vocational expert ("VE"), Victor Alberigi, and testified at an administrative hearing by video before ALJ Stephan Bell. Dkt. #4, pp.522-555. Plaintiff testified that she was terminated from her job as a bank teller in 2011 because she was missing a lot of work due to her migraines and spending too much time in the bathroom because of her irritable bowel syndrome. Dkt. #4, pp.528-29. She was looking for a more flexible job when she became pregnant and subsequently determined that she did not have the capacity to work and be a mother. Dkt. #4, p.529. Plaintiff lives with her husband, eight-year old son, and dog. Dkt. #4, pp.529-30.

Plaintiff underwent spinal fusion following a motor vehicle accident, but still experiences numbness in her left leg if she stands or walks too much. Dkt. #4, pp.531-32. She can stand approximately 10 minutes before she experiences pins and needles in her leg. Dkt. #4, p.539. She can walk about three blocks, but is really slow. Dkt. #4, p.539. She rented a motorized wheelchair at the fair and a wheelchair at the zoo. Dkt. #4, p.532. She does not wear tie shoes. Dkt. #4, p.531. She suffers from weekly migraines which last up to four days. Dkt. #4, p.533. She can spend twenty minutes or more in the bathroom at a time and, on a bad day, use the bathroom eight times a day. Dkt. #4, pp.534-35. Her right hand will go numb if she overuses it. Dkt. #4,

p.540. She described herself as "pretty anxious" and testified that she experiences panic attacks on a regular basis. Dkt. #4, p.538.

When asked to assume an individual with plaintiff's age, education and past work experience who could work at the light exertional level and occasionally climb, balance, stoop, kneel, crouch and crawl and perform simple, routine tasks and make simple work-related decisions, the VE testified that such an individual could perform her past work as a grocery store cashier, which was an unskilled position. Dkt. #4, pp.546-47. If the individual was limited to sedentary work, the VE testified that the cashier position would be precluded, but the individual could work as a document clerk, envelope clerk, and surveillance monitor, each of which were unskilled, sedentary positions. Dkt. #4, pp.546-547. If plaintiff was off-task for more than 15% of an 8-hour workday or absent two days per month, the VE testified that plaintiff would not be capable of employment. Dkt. #4, p.548.

On December 23, 2021, the ALJ rendered a decision that plaintiff was disabled as of May 6, 2019, which is the date she was involved in a motor vehicle accident. Dkt. #4, pp.504-515. Plaintiff commenced this action seeking review of the Commissioner's final decision for the period between December 7, 2011 and May 6, 2019 on April 22, 2022. Dkt. #1.

## DISCUSSION AND ANALYSIS

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a). At step one, the claimant must demonstrate that she is not engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). At step two, the claimant must demonstrate that she has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related

activities. 20 C.F.R. § 404.1520(c). If the impairment meets or medically equals the

criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation

No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled

to disability benefits. 20 C.F.R. § 404.1520(d). If the impairment does not meet

the criteria of a disabling impairment, the Commissioner considers whether the

claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R.

§ 404.1520(e)-(f). If the claimant is unable to return to past relevant work, the burden of

proof shifts to the Commissioner to demonstrate that the claimant could perform other

jobs which exist in significant numbers in the national economy, based on claimant's

age, education and work experience. 20 C.F.R. § 404.1520(g).


        In the instant case, the ALJ made the following findings with regard to the

five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful

activity since the alleged onset date of December 7, 2011; (2) plaintiff's fibromyalgia,

mood disorder, generalized anxiety disorder, adjustment disorder, major depressive

disorder, morbid obesity, and degenerative disc disease of the lumbar spine constitute

severe impairments; (3) plaintiff's impairments did not meet or equal any listed

impairment; (4) prior to May 6, 2019, plaintiff retained the RFC to perform sedentary

work[2] except that she is restricted to lifting, carrying, pushing and pulling ten pounds

---

[2]    Sedentary work involves lifting no more than 10 pounds at a time and
       occasionally lifting or carrying articles like docket files, ledgers, and small
       tools. Although a sedentary job is defined as one which involves sitting, a
       certain amount of walking and standing is often necessary in carrying out
       job duties. Jobs are sedentary if walking and standing are required
       occasionally and other sedentary criteria are met.
20 C.F.R. § 416.967(a).

occasionally and less than ten pounds frequently, sitting for six hours and standing or

walking for two hours in an eight-hour day with no more than occasional climbing,

balancing, stooping, kneeling, crouching and crawling and no more than occasional

vibration and moderate noise, and is limited to simple, routine tasks and simple work-

related decisions and, as of May 6, 2019, plaintiff would also be absent from work 2

days per month; and (5) plaintiff was unable to perform her past relevant work but, prior

to May 6, 2019, plaintiff was capable of working as a document clerk, envelope clerk

and surveillance systems monitor, each of which were unskilled, sedentary positions,

and was not, therefore, disabled within the meaning of the SSA, but as of May 6, 2019,

there were no jobs in the national economy that plaintiff could perform, thereby

warranting a finding that plaintiff was disabled as of May 6, 2019. Dkt. #6, pp.583-602.


Plaintiff argues that the ALJ failed to provide good reasons for his

rejection of the opinion of her primary care physician, Dr. Varavenkataraman. Dkt. #6-1,

pp.15-23. Plaintiff also argues that it is unclear how the ALJ determined that plaintiff

would be absent from work two days per month as of May 6, 2019, as the only opinion

regarding work absences was rendered by plaintiff's primary care physician, Dr.

Varavenkataraman, who opined on November 30, 2017, *inter alia*, that plaintiff would

be absent more than four days per month due to her medical condition and need for

treatment. Dkt. #6-1, pp.28-29. As a result, plaintiff argues that the ALJ's determination

that plaintiff was not disabled prior to May 6, 2019, is not supported by substantial

evidence. Dkt. #6-1, pp.26-30. Finally, plaintiff argues that the ALJ failed to reconcile

his assessment of plaintiff's RFC with Dr. Ippolito's opinion that plaintiff had moderate

limitations dealing with stress. Dkt. #6-1, pp.23-26. More specifically, plaintiff argues

that the ALJ's RFC limiting plaintiff to simple, routine tasks and simple work-related

decision was insufficient to account for a moderate limitation dealing with stress. Dkt.

#6-1, pp.24-26.

The Commissioner responds that the ALJ provided sufficient reasoning

for his RFC determination, including the weight afforded to Dr. Varavenkataraman's

opinion. Dkt. #7-1, pp.18-22. Moreover, the Commissioner responds that the ALJ

appropriately accounted for Dr. Ippolito's opinion by limiting plaintiff to unskilled, simple

work. Dkt. #7-1, pp.14-18. Finally, the Commissioner responds that the ALJ properly

considered the medical evidence following plaintiff's automobile accident to determine

an RFC which rendered her disabled as of May 6, 2019. Dkt. #7-1, pp.22-25. The

Commissioner argues that the ALJ's RFC determination, which resulted in a partially

favorable disability finding, is supported by substantial evidence. Dkt. #7-1, pp.25-28.

For claims filed before March 27, 2017, the SSA regulations provide that,

unless the ALJ affords controlling weight to a treating source's medical opinion, the ALJ

is required to consider and weigh all medical opinions of record, whether those opinions

are from acceptable medical sources, other medical sources or non medical sources,

with consideration of the following factors for determining the appropriate weight to

afford such opinions: (1) the frequency of examination; (2) the length, nature and extent

of the treatment relationship; (3) the evidence in support of the medical opinion; (4) the

consistency of the opinion with the record as a whole; (5) whether the opinion is from a

specialist; and (6) other factors brought to the SSA's attention that tend to support or

contradict the opinion. *Saxon v. Astrue*, 781 F. Supp.2d 92, 103-04 (N.D.N.Y. 2011);

*See* 20 C.F.R. § 404.1527 (f)(2). The factors to be considered in evaluating opinions

from non-treating medical sources are the same as those for assessing treating

sources, except that consideration of the treatment relationship is replaced with

consideration of whether the non-treating source examined the plaintiff. *White v. Saul*,

414 F. Supp.3d 377, 383 (W.D.N.Y. 2019). So long as the ALJ's rationale is clear,

however, the ALJ need not address each factor individually. *See. Atwater v. Astrue*,

512 Fed. App'x 67, 70 (2d Cir. 2013).


Genuine conflicts in the medical evidence are for the ALJ to resolve.

*Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). Even where the ALJ's

determination does not perfectly correspond with any of the opinions of medical

sources cited in a decision, the ALJ is entitled to weigh all of the evidence available to

make a residual functional capacity finding that is consistent with the record as a whole.

*Trepanier v. Comm'r of Soc. Sec.*, 752 Fed. App'x 75, 79 (2d Cir. 2018); *Matta v.

Astrue*, 508 Fed. App'x 53, 56 (2d Cir. 2013). An ALJ need not reconcile every conflict

in the record, but must set forth the crucial factors in his determination with sufficient

specificity to enable a reviewing court to decide whether the determination is supported

by substantial evidence. *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019).  While the

ALJ is not obligated to explicitly reconcile every conflicting shred of medical evidence,

the ALJ cannot selectively choose evidence in the record to support the ALJ's

conclusions. *Gecevic v. Sec. of Health & Human Servs.*, 882 F. Supp. 278, 286

(E.D.N.Y. 1995). A plaintiff is entitled to understand why the ALJ chose to disregard

portions of medical opinions that were beneficial to his application for benefits.

*Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp.2d 288, 297 (W.D.N.Y. 2006). Thus,

when an ALJ chooses to adopt only portions of a medical opinion, the ALJ must explain

his decision to reject the remaining portions. *Tanya Y. v. Comm'r of Soc. Sec.*, 20-CV-

712, 2022 WL 1115458, at *2 (W.D.N.Y. Apr. 14, 2022).


         Plaintiff underwent a consultative physical examination on October 15,

2015 with Donna Miller, D.O. Dkt. #4, p.374. Plaintiff reported that she had a history of

migraines and chronic low back pain and was diagnosed with irritable bowel syndrome

with diarrhea in 2011 and fibromyalgia in 2015. Dkt. #4, p.374. She reported that she

cooks daily; cleans as needed; provides childcare daily; showers and dresses daily.

Dkt. #4, p.375. She was observed to have a normal gait and squat 75% of normal, but

declined to walk on heels and toes. Dkt. #4, p.376. She was able to rise from a chair

without difficulty and needed no help changing for the examination or getting on and off

the examination table. Dkt. #4, p.376. She demonstrated full flexion, extension and

lateral flexion, as well as full rotary movement, bilaterally, in both the cervical and

lumbar spine. Dkt. #4, pp.376-377. Trigger points were noted in L2-L3. Dkt. #4, p.377.

Straight leg raise was negative bilaterally. Dkt. #4, p.377. She demonstrated full range

of motion in the shoulders, elbows, forearms, and wrists bilaterally. Dkt. #4, p.377. Hip

flexion/extension was 95 degrees bilaterally, internal rotation 35 degrees, external

rotation 45 degrees, backward extension 30 degrees, abduction 20 degrees, and

adduction 20 degrees, with decrease appearing to be secondary to obesity. Dkt. #4,

p.377. She had full range of motion of knees and ankles bilaterally. Dkt. #4, p.377. Her

deep tendon reflex was equal in upper and lower extremities, with no sensory deficits

noted and 5/5 strength. Dkt. #4, p.377. No edema was observed. Dkt. #4, p.377. Her

hand and finger dexterity was intact and her grip strength was 5/5 bilaterally. Dkt. #4,

p.377. Dr. Miller opined that plaintiff had "mild limitations in lifting, bending and carrying"

and should avoid dust, pulmonary irritants and tobacco exposure due to asthma. Dkt.

#4, p.378. The ALJ afforded Dr. Miller's opinion "little weight," noting that plaintiff "has

reported chronic pain and has taken medication and engaged in conservative treatment

for her pain." Dkt. #4, p.511.

Plaintiff also underwent a consultative psychiatric evaluation on October

15, 2015 with Janine Ippolito, Psy.D.. Dkt. #4, p.381. Plaintiff reported sad and

depressed mood, crying spells, loss of usual interests, fatigue and low energy and

noted that her depression was worsened by the deaths of two brothers within the past

year. Dkt. #4, p.382. She endorsed excessive apprehension, worry and nervousness,

indicating that she does not leave the house often due to anxiety and panic attacks.

Dkt. #4, p.382. She also endorsed short-term memory deficits and concentration

difficulties. Dkt. #4, p.382. Plaintiff reported that she is able to cook, clean, wash

laundry, drive, grocery shop, care for her child, shower, and dress independently, albeit

with frequent breaks. Dkt. #4, p.383. She spends a typical day taking care of her son

and watching television. Dkt. #4, p.384. Dr. Ippolito observed that plaintiff's attention

and concentration was intact, but her memory skills were mildly impaired due to anxiety

and nervousness. Dkt. #4, p.383. Her intellectual functioning appeared to be average,

with fair to good insight, good judgment, adequate expressive and receptive language skills, and adequate overall presentation. Dkt. #4, pp.382-383. Dr. Ippolito opined that plaintiff was

> able to follow and understand simple directions and
> instruction, perform simple tasks independently, maintain a
> regular schedule, learn new tasks, perform complex tasks
> independently, make appropriate decisions, and relate
> adequately with others with no evidence of limitations. She
> can maintain attention and concentration with mild
> limitations. She can appropriately deal with stress with
> moderate limitations. These limitations are due to her
> emotional distress, distractibility, and fatigue.

Dkt. #4, p.384. Dr. Ippolito opined that plaintiff's prognosis would improve with additional mental health treatment, but was currently fair, given her lack of mental health counseling. Dkt. #4, p.384. The ALJ afforded Dr. Ippolito's opinion "great weight," explaining:

> The assessment that the [plaintiff] has moderate limitation in
> dealing with stress is supported by the examination findings
> as well as the above noted tearfulness in the record even
> with the [plaintiff's] use of medication. However, the record
> also supports more than mild limitation in the [plaintiff's]
> ability to maintain attention and concentration. The [plaintiff]
> reports "brain fog" as well as memory difficulties and her
> memory was mildly impaired at the consultative examination.
> . . . Therefore, some additional limitations are warranted.

Dkt. #4, p.511.

Plaintiff's primary care provider, Raghopathy Varavenkataraman, M.D., completed a Medical Opinion Statement (Physical), dated November 30, 2017, indicating that he had treated plaintiff since 2003 and that she was diagnosed with fibromyalgia, migraines, and depression and anxiety, with a stable prognosis. Dkt. #4,

p.463. He identified the following symptoms: fatigue, body pain, headaches, memory

issues, anxiety and panic attacks, and irritable bowel syndrome with diarrhea. Dkt. #4,

p.463. Dr. Varavenkataraman indicated that plaintiff could sit and stand/walk less than 2

hours in an 8-hour workday and would need to walk 10 minutes every 20 minutes and

be able to shift positions at will. Dkt. #4, p.464. She would need to get up every 20

minutes and stand for 15 minutes. Dkt. #4, p.466.  She was unable to walk a city block

without rest or severe pain. Dkt. #4, p.466. She would need to take unscheduled breaks

for 20-30 minutes quite often. Dkt. #4, p.464. She would need to elevate her legs at

least a foot off the ground approximately 50% of time she was sitting. Dkt. #4, p.464.

She could occasionally lift 20 pounds; look down; turn her head to the right or left; look

up; hold her head in a static position; and twist, but could rarely stoop, crouch, squat or

climb stairs and could never climb ladders. Dkt. #4, pp.464-465. She could grasp, turn

and twist objects in her right hand 40% of the work day and 50% in her left hand; could

engage in fine manipulation 30% of the work day with her right hand and 50% with her

left hand; and reach bilaterally, including overhead, 20% of the work day. Dkt. #4,

p.465. Dr. Varavenkataraman identified depression and anxiety as contributing factors

and opined that plaintiff was incapable of even low stress jobs due to her history of

anxiety and panic attacks. Dkt. #4, p.466. He also indicated that pain would frequently

interfere with her ability to concentrate on even simple work tasks. Dkt. #4, p.466. Dr.

Varavenkataraman opined that plaintiff would be absent from work more than 4 days

per month as a result of her impairments or treatment. Dkt. #4, p.465.

The ALJ recognized that Dr. Varavenkataraman had been treating plaintiff

"for several years" and afforded "some weight" to Dr. Varavenkataraman's opinion

regarding the plaintiff's ability to lift and postural activities, but found that "the record evidence does not support, prior to May 2019, the inability to sit for more than 2 hours or the [plaintiff's] need to lie down for 6 hours to relieve pain." Dkt. #4, pp.510 & 512. The ALJ noted that plaintiff's "treatment was conservative in nature, consisting generally of medication usage" and that plaintiff was "the sole caregiver of a young child and such is not consistent with the need to recline for a substantial portion of the day." Dkt. #4, p.512.

As an initial matter, the Court concludes that the ALJ's assessment of no more than moderate mental limitations in the areas of concentrating, persisting or maintaining pace and adapting or managing onself are supported by substantial evidence in the record and are adequately addressed by limiting plaintiff to unskilled work. *See Kya M. v. Comm'r of Soc. Sec.,* 506 F. Supp.3d 159, 166-167 (W.D.N.Y. 2020) (limiting plaintiff to simple, routine tasks addresses moderate limitations in concentration, persistence, and pace); *See also Jahmari R. v. Comm'r of Soc. Sec.,* 2022 WL 875166, at *6 (W.D.N.Y. March 24, 2022) (limiting plaintiff to simple, routine, repetitive work properly accounts for moderate limitations in plaintiff's ability to deal with stress). As the ALJ noted, mental status examinations were generally within defined limits despite plaintiff's reports of brain fog and forgetfulness, and plaintiff demonstrated normal concentration and only mild issues with memory upon consultative examination. Dkt. #4, p.508 & 511. Moreover, although she reported difficulty dealing with stress and was prescribed medication for anxiety, treatment notes do not suggest more than moderate limitations despite ongoing situational stressors. Dkt. #4, p.508.

Moreover, the Court rejects plaintiff's argument that the ALJ used plaintiff's caregiver responsibilities as a proxy for her ability to work, which would be improper. *See Harris v. Colvin*, 149 F.Supp.3d 435, 445 (W.D.N.Y. 2016) (collecting cases recognizing the differences between caring for one's children at home and performing substantial gainful employment in the competitive workplace). Instead, the ALJ recognized the obvious incompatibility of being the sole caregiver to a preschool child and spending a substantial portion of the day in a reclined position. Dkt. #4, p.512.

Finally, however, the Court finds plaintiff's arguments regarding the ALJ's assessment of plaintiff's absence from work require further explanation, warranting remand. The ALJ's determination of plaintiff's RFC before and after the motor vehicle accident on May 6, 2019 differs in only one respect; subsequent to that date, the ALJ determined that plaintiff would be absent from work 2 days per month. Dkt #4, p.512. In reaching this conclusion, the ALJ found that plaintiff's allegations regarding her symptoms and limitations are consistent with the evidence beginning May 6, 2019. Dkt. #4, p.512. The ALJ recounts medical imaging subsequent to the motor vehicle accident demonstrating disc herniation; EMG and nerve conduction studies demonstrating radiculopathy; pain management treatment, including medication and injections; and, ultimately, spinal surgery, which significantly improved her pain. Dkt. #4, pp.512-513. However, the ALJ does not identify any medical opinion or evidence of record from this timeframe suggesting that the sequela of her motor vehicle accident would cause her to miss work 2 days per month.

As far as the Court can discern, the only evidence in the record regarding plaintiff's absence from work comes from Dr. Varavenkataraman, who opined on November 30, 2017 that plaintiff would be absent from work more than four days per month due to her impairments or treatment. Dkt. #4, p.465. This aspect of Dr. Varavenkataraman's medical opinion was omitted from the ALJ's recitation of Dr. Varavenkataraman's medical source statement (Dkt. #4, p.510), and therefore not addressed by the ALJ in his decision. Given plaintiff's testimony that she was terminated from her prior employment due to absences caused by her migraines and irritable bowel syndrome, and given the ALJ's acknowledgment of plaintiff's severe impairments of, *inter alia*, fibromyalgia, mood disorder, generalized anxiety disorder, adjustment disorder, major depressive disorder and degenerative disc disease of the lumbar spine, as well as his recognition of medical evidence of chronic diarrhea and migraines, the Court cannot find the ALJ's RFC for the period prior to May 6, 2019 supported by substantial evidence without an explanation why Dr. Varavenkataraman's opinion as to plaintiff's inability to work a full week should not be credited. *See Kuhaneck v. Comm'r of Soc. Sec.*, 357 F. Supp.3d 241, 248 (W.D.N.Y. 2019) (remanding where ALJ afforded treating physician's opinion "some weight," but offered only conclusory statement that he did not find much support for some of the opinions of plaintiff's treating physician, including opinion that plaintiff would miss more than four days of work a month); *Hayden v. Comm'r of Soc. Sec.*, 338 F. Supp.3d 129, 138 (W.D.N.Y. 2018) (remanding where ALJ failed to provide good reasons for rejecting treating psychiatrists opinion that, *inter alia*, plaintiff would be absent from work two days per month).

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings

(Dkt. #6), is granted and the matter is remanded for further administrative proceedings

and the Commissioner's motion for judgment on the pleadings (Dkt. #7), is denied.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:       Buffalo, New York**
             **September 30, 2024**

                                    **s/ H. Kenneth Schroeder, Jr.**
                                    **H. KENNETH SCHROEDER, JR.**
                                    **United States Magistrate Judge**